IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

CEDRIC WILLIAMS,

    Plaintiff

v.

CODY HINSON,

DAVID KELLEY, and

CITY OF BRENTWOOD, TENNESSEE,

    Defendants

## COMPLAINT

The Plaintiff, Cedric Williams, hereby brings suit against the Defendants as follows:

## THE PARTIES

1) The Plaintiff, CEDRIC WILLIAMS, is a private citizen of Rutherford County, Tennessee.

2) Defendants CODY HINSON and DAVID KELLEY are police officers of the Brentwood Police Department. To be clear, though, they are sued individually.

1

3) Defendant CITY OF BRENTWOOD, TENNESSEE is a political subdivision of the State of Tennessee (in Williamson County). Among other functions, it runs the Brentwood Police Department.

## FACTUAL BACKGROUND

4) On March 23, 2024, Plaintiff CEDRIC WILLIAMS was visiting the Brentwood Skate Center in Brentwood, Tennessee.[1]

5) While there, WILLIAMS began to be harassed on multiple occasions by a security guard, Defendant CODY HINSON. For example, at one point, HINSON approached him and criticized him for having pants that sagged. Ultimately, as a result of feeling unwanted, WILLIAMS decided simply to leave.

6) But as WILLIAMS and a female friend of his were approaching their vehicle, planning to leave, Defendant HINSON followed outside. In other words, HINSON would not let him leave.

7) Unbeknownst to WILLIAMS, Defendant HINSON was not just a security guard, but a police officer as well.

8) Apparently, Officer HINSON came outside to seize the leaving suspect. The most immediate reason for the planned seizure was that, allegedly, HINSON had made an innocuous but flirty remark to two woman inside.[2]

---

1 In 2025, March 23 fell on a Sunday.

2 Right before the officer goes outside, one of these woman can be heard on bodycam summarizing the comment — that WILLIAMS asked them something about working out. The exact audio is hard to hear, though.

2

9) Besides this comment, earlier that night Officer HINSON had received a report that WILLIAMS made another comment to a teenage girl — something to the effect of, "Too bad you're not eighteen."

10) At the time of the earlier comment, the officer had taken no immediate action.

11) In any event, none of the alleged comments would have violated Tennessee law.

12) Nonetheless, in the parking lot, HINSON asked Plaintiff WILLIAMS to stay put, saying, "Can you stay where you're at for me?"

13) Prior to saying these words, he did try to tell WILLIAMS, twice, that he was a member of the "Brentwood Police Department." But WILLIAMS responded across the parking lot, twice, saying that he could not hear what HINSON was saying. And when the directions were spoken a third time, they did *not* squarely tell WILLIAMS that he was under arrest, that he was seized, or even that he was dealing with the police.

14) Consequently, when told to stay on scene, WILLIAMS responded, "Just let me go home. I'm fixing to go home." Then he peacefully got in the passenger's seat. His female associate then drove him away.

15) Defendant HINSON radioed other police officers, telling them to seize the "suspicious" vehicle. Namely, the man was suspicious because he was "hitting on minors."

16) Some ways down the street, other Brentwood police officers, including Defendant DAVID KELLEY, apprehended the vehicle and seized WILLIAMS.

17) At the traffic stop, the police accused WILLIAMS of evading, or possibly *resisting,* arrest. In other words, they faulted him for not having stayed at the skating rink when ordered.

18) Notably, though, Evading Arrest is not a crime if the arrest being evaded is illegal. Tenn. Code Ann. § 39-16-603(b)(2); *see also Bad Elk v. United States*, 177 U.S. 529, 534-35 (1900). In any event, ultimately the police never charged WILLIAMS with Evading Arrest.

19) In response to their criticism of his departure from the skating rink, WILLIAMS told them that he had simply not understood what was going on — and that he had never even known that HINSON was a police officer. Repeatedly, WILLIAMS apologized. Repeatedly, he said that he intended to cooperate. Further, he tried to speak with the police in order to understand the accusations against him of speaking to females.

20) WILLIAMS provided his identification and other needed documents, showing that he lived only one county over.

21) About 9 minutes into the traffic stop, the police brought out a drug dog, ordering it to sniff around WILLIAMS's vehicle.

22) After circling the vehicle multiple times and seemingly being coached to alert, finally the dog supposedly engaged in some sort of alert. (Although the

4

Plaintiff does not understand how, the police later claimed that the dog *told* them specifically which drugs it smelled.)

23) About 12 minutes into the stop, the police got irritated with WILLIAMS for keeping his hands up as a sign of surrender. Consequently, they arrested him by placing him in handcuffs while his car was searched.

24) In response to the order to handcuff him but before the handcuffs were placed, WILLIAMS advised HINSON, KELLEY, and the other police, repeatedly, that he had physical problems with his shoulder and back.

25) Nonetheless, Officers HINSON and KELLEY handcuffed him. Specifically, HINSON was the one who ordered it. But HINSON is the main one who physically carried it out.

26) As a result of being handcuffed behind his back, WILLIAMS suffered substantial medical injuries, pain and suffering, loss of enjoyment of life, and medical expenses.

27) Finally, upon searching the car, the police found some moonshine, for which they charged the female driver via criminal citation. Supposedly, they also found a baggie with suspected marijuana residue somewhere in the vehicle, for which they charged WILLIAMS with Drug Paraphernalia. However, the Plaintiff contends that the police simply fabricated this allegation, and that really the police just saw a burnt cigarette. Notably, the *only* point at which the officers claim to have smelled any marijuana came about 20 minutes or more *after* the search,

whereupon they identified a marijuana smell in the air as emanating from another perpetrator in a nearby parking garage.

28) Ultimately, Officers HINSON and KELLEY arrested and charged WILLIAMS with Public Intoxication even though he was not intoxicated, and even though they had no reason to claim that he was. Also, they arrested and charged him with Resisting Arrest, even though he did not really resist. Also, they arrested and charged him with Drug Paraphernalia even though this charge was false as well, and they knew as much.

29) As a proximate result of the initial confrontation at the skating rink, traffic stop, arrest, and criminal charges, WILLIAMS spent time in jail. He incurred bail expenses and legal fees. He suffered emotional distress. He had to spend time attending court.

30) When arresting WILLIAMS, the arresting officers gave his car and house keys to the female driver — who was not the owner of the car. This woman, while purportedly a friend of WILLIAMS, was a recovering drug addict whom WILLIAMS was attempting to help.

31) As a result of receiving WILLIAMS's car and his keys, the woman broke into his house while he was in jail and stole valuable items, as well as thousands of dollars that he was storing in a safe.

32) Eventually, the criminal charges against WILLIAMS were nonsuited by the State of Tennessee for lack of evidence.

33) At all times relevant, the Defendants acted under color of law, whether as a government entity or as law enforcement officers.

34) At all times relevant, Defendants HINSON and KELLEY were acting on the business of the CITY OF BRENTWOOD and acting within the scope of their employment.

## CLAIMS PRESENTED

### COUNT I

### UNREASONABLE SEARCH AND SEIZURE

### 42 U.S.C. § 1983

*(Against all Defendants)*

35) The other sections are incorporated by reference.

36) By attempting to seize the Plaintiff at the skating rink and later by seizing him on the roadway without probable cause or even reasonable suspicion, Defendants CODY HINSON and DAVID KELLEY performed an unreasonable seizure under color of law, in violation of the Fourth Amendment (False Arrest).

37) By arresting and then charging the Plaintiff baselessly with Public Intoxication, Resisting Arrest, and Drug Paraphernalia, charges later dismissed, Defendants HINSON and KELLEY performed an unreasonable seizure under color of law, in violation of the Fourth Amendment (False Arrest and Malicious Prosecution).

7

38) By handcuffing and thereby arresting the Plaintiff without probable cause and/or with unreasonable force, Defendants HINSON and KELLEY carried about an unreasonable seizure under color of law (False Arrest and Excessive Force).

39) The CITY OF BRENTWOOD, TENNESSEE is also liable for these wrongs because it fails to supervise its officers to prevent them from carrying out unlawful acts, and that lack of supervision is the moving force behind the violation(s).

## COUNT II

## INFRINGING THE FREEDOM OF SPEECH

## 42 U.S.C. § 1983

### *(Against all Defendants)*

40) The other sections are incorporated by reference.

41) By retaliating against the Plaintiff for his speech at the skating rink, and by doing so in a manner that would chill a person of ordinary firmness from speaking, Defendants HINSON and KELLEY infringed the freedom of speech under color of law, in violation of the First Amendment.

42) Specifically, the Defendants either had no probable cause, or alternatively, if any probable cause did exist, then it was only for crimes for which

the police ordinarily would not prosecute in the absence of retaliation for speech. *See Nieves v. Bartlett*, 587 U.S. 391 (2019).

43) The CITY OF BRENTWOOD, TENNESSEE is also liable for these wrongs because it fails to supervise its officers to prevent them from carrying out unlawful acts, and that lack of supervision is the moving force behind the violation.

## COUNT III

## FALSE ARREST

### Tennessee Common Law

### *(Against Hinson and Kelley)*

44) The other sections are incorporated by reference.

45) By arresting the Plaintiff custodially instead of giving him a misdemeanor citation as required by law, *see* Tenn. Code Ann. § 40-7-118, Defendants HINSON and KELLEY committed false arrest in violation of the Tennessee common law.

## COUNT IV

## NEGLIGENCE

### Tennessee Governmental Tort Liability Act

### *(Against the City of Brentwood)*

46) The other sections are incorporated by reference.

47) By negligently violating a duty of care owed to the Plaintiff suspect through its employees, namely by handcuffing him behind his back instead of in front, double-cuffing, or otherwise detaining him safely, and ultimately by injuring him bodily, the CITY OF BRENTWOOD is liable under the Tennessee Governmental Tort Liability Act.

48) By negligently violating a duty of care owed to the Plaintiff arrestee by giving his car and keys to a criminal who then used said items to steal from his house, the CITY OF BRENTWOOD is liable under the Tennessee Governmental Tort Liability Act.

## RELIEF SOUGHT

PREMISES CONSIDERED, Plaintiff Cedric Williams prays for the following relief:

(i) $100,000 in nominal/compensatory damages;

(ii) Another $100,000 in punitive damages, but sought only from the individual officers;

(iii) Reasonable attorneys fees per 42 U.S.C. § 1988; and

(iv) Any further relief that the Court finds appropriate, such as the taxation of costs to the Defendants.

Respectfully submitted,

/s/ Drew Justice
Drew Justice #29247
Attorney for Cedric Williams
1902 Cypress Drive
Murfreesboro, TN 37130
(615) 419-4994
drew@justicelawoffice.com